Cooke, J.
We hold that, after the expiration of an employment agreement, it is not a violation of a public employer’s duty to negotiate in good faith to discontinue during the negotiations for a new agreement the payment of automatic annual salary increments, however long standing the practice of paying such increments may have been. Accordingly, it was error for the Public Employment Relations Board (PERB) to order the petitioner in this proceeding to negotiate in good faith because of its failure to pay increments after expiration of an employment agreement.
This labor dispute arose between the Board of Cooperative Educational Services of Rockland County (BOCES), a public employer, and the BOCES Staff Council (the Staff Council), the recognized negotiating representative of instructional employees of BOCES. Since 1968, the parties have been signatories to a series of four agreements, the most recent of which covered the period from July 1, 1972 to June 30, 1974. A progression of automatic step increments for employees in the unit has been provided for in each of these agreements. In addition, in prior years, when a contract between the parties had expired, even if a successor agreement had not yet been reached, BOCES paid the automatic step increments to returning unit employees.
*755 In March, 1974, the Staff Council advised BOCES that it wished to negotiate a successor contract to the 1972-1974 agreements. Prior to the commencement of negotiations, on June 19, 1974, BOCES adopted a resolution which provided that pending the execution of a new agreement or September 1, 1974, whichever came earlier, the provisions of the agreement expiring June 30, 1974 would be recognized, including salary and salary rates in effect on June 30, 1974, for the period herein contemplated. Pursuant to this resolution, which was subsequently extended, BOCES maintained the salaries at the rate in effect on June 30, 1974 during negotiations for the successor agreement, but refused to pay the step increments to returning unit employees. Because of this refusal, the Staff Council filed with PERB an improper practice charge against BOCES alleging that the latter had unilaterally withdrawn a previously enjoyed benefit—aútomatic salary increments—while a successor agreement was being negotiated, in violation of section 209-a (subd 1, par [d]) of the Civil Service Law (the Public Employees’ Fair Employment Act).
At the hearing, BOCES raised an affirmative defense that the right to the salary increments was extinguished when the most recent agreement expired, on June 30, 1974. This argument was rejected by the hearing officer, who reasoned that the duty of an employer to maintain the status quo during the course of negotiations is not directly concerned with whether or not contractual obligations survive a contract’s expiration. Authority for this reasoning was based on PERB’s decision in Matter of Triborough Bridge & Tunnel Auth. (District Council 37 & Local 1396) (5 PERB 3064 [1972]). In that decision, PERB held that it is a violation of a public employer’s duty to negotiate in good faith for it to alter, unilaterally during negotiations, terms and conditions of employment which include a long-standing and continued practice of providing annual salary increments, even though the agreement under which such increments were negotiated has expired. The hearing officer, applying this decision, commonly referred to as the "Triborough Doctrine”, found that BOCES had violated its duty to negotiate in good faith and recommended that it be ordered to negotiate in good faith, such order contemplating that it would cease and desist from refusing to pay the increments and would forthwith pay such increments retroactive to the commencement of the 1974-1975 school year.
Thereafter, PERB indorsed the reasoning of the hearing *756 officer and his conclusions of law. It also reasserted the validity of the Triborough "doctrine” or proposition and further noted that it makes no difference under said proposition whether or not the practice of paying increments was ever embodied in an agreement. In addition, while recognizing that it could not compel BOCES to pay the increments, it rejected BOCES’ request that it limit its order to a direction that BOCES negotiate in good faith. PERB’s order, therefore, stated in relevant part: "we order respondent to negotiate in good faith, such order contemplating that respondent will cease and desist from refusing to pay increments to those of its employees entitled to increments under the recently expired agreement and that it will forthwith pay to such employees increments retroactive to the commencement of the 1974-75 school year”.
BOCES thereafter commenced an article 78 proceeding seeking to annul and vacate PERB’s order. The Appellate Division held that PERB’s determination that BOCES violated its duty to negotiate in good faith was not arbitrary and capricious and therefore must be confirmed. That court noted, however, that upon a charge that a public employer has failed to negotiate in good faith with the recognized representatives of its public employees, PERB is limited by statute to the entry of an order directing the public employer to negotiate in good faith (citing Civil Service Law, § 205, subd 5, par [d]; Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd., 36 NY2d 534). The order was therefore modified by the Appellate Division by deleting that part thereof which stated that it was contemplated that BOCES would cease and desist from refusing to pay increments and pay such increments retroactively. Finally, it rejected the request by the Staff Council and the New York State United Teachers that the court exercise its remedial powers by ordering payment of salary increments. The court reasoned that PERB had "exclusive nondelegable jurisdiction” in this area (see Civil Service Law, § 205, subd 5, par [d]), and that since the Legislature contemplated an administrative rather than a judicial approach, the court could not grant the relief sought.
Although BOCES was not aggrieved by the modification so that an appeal as of right by it would not lie (CPLR 5601, subd [a], par [iii]), we granted leave to it pursuant to CPLR 5602 in order to consider PERB’s so-called "Triborough Doc *757 trine”. At the outset, it should be noted that the Federal cases involving the private sector relied on by the Staff Council and PERB are not dispositive. That there are problems peculiar to public employers is manifested by the number of cases before this court concerning the financial difficulties of these employers. In addition to financial pressures, other factors enter in the budgetary considerations of such employers (see, e.g., L 1976, ch 132, commonly known as the Stavisky-Goodman bill). Perhaps for this reason, the Legislature provided with respect to improper labor practices that "fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent” (Civil Service Law, § 209-a, subd 3). So mindful, we turn to a consideration of "Triborough”.
It has been held that the Triborough proposition is unnecessary where the unilateral conduct of an employer in refusing to grant agreed upon increments occurs before the bargaining agreement expires, because in that instance the evidence of failure to negotiate in good faith is manifested by the failure to live up to the terms of the existing contract (see, e.g., Matter of Municipal Housing Auth. for City of Yonkers v New York State Public Employment Relations Bd., 46 AD2d 911; cf. Matter of City School Dist. of City of Oswego v Helsby, 42 AD2d 262). The proposition, however, is sought to be applied in circumstances where the contract has expired because, it is said, a unilateral failure to pay increments under the expired contract also manifests a lack of good faith. While such a principle may apply where an employer alters unilaterally during negotiations other terms and conditions of employment, it should not apply where the employer maintains the salaries in effect at the expiration of the contract but does not pay increments.
The reasons for not giving effect in these circumstances to the so-called "Triborough Doctrine” should be apparent. Involving a delicate balance between fiscal and other responsibilities, its perpetuation is fraught with problems, equitable and economic in nature. As a reward and by encouraging the retention of experienced personnel in public positions, the concept of increments based on continuance In service, properly exercised, is creditable for the public entity and the citizenry are better served, and time losses suffered because of training periods and inefficiency in performance are likely to *758 be reduced. The concept of continual successive annual increments, however, is tied into either constantly burgeoning growth and prosperity on the part of the public employer, or the territory served by it, or a continuing general inflationary spiral, without admeasurement either of the growth or inflation and without consideration of several other relevant good faith factors such as comparative compensation, the condition of the public fisc and a myriad of localized strengths and difficulties. In thriving periods the increment of the past may not squeeze the public purse, nor may it on the other hand be even fair to employees, but in times of escalating costs and diminishing tax bases, many public employers simply may not be able in good faith to continue to pay automatic increments to their employees.
PERB’s counsel takes the position that applying "Triborough”, so as, in effect, to require the payment during negotiations of salary increments under an expired contract, does not lock the employees into a guaranteed gain position. Rather, it is argued, payment of such increments merely preserves the existing relationship until different conditions are established through collective bargaining which may include the entire abolition of the incremental structure. Such arguments, though superficially appealing, are not convincing. They are based on the erroneous assumption that it is the "existing relationship” which is being preserved, when, in reality, such payments extend or change the relationship established by the parties. In times either of inflation or depression, employees, quite naturally, will be reluctant to accept abolition of automatic increments which they have been receiving. To the extent that it provides that such increments must be paid even after expiration of contract, the proposition gives an edge and makes negotiation of that point that much more difficult.
To say that the status quo must be maintained during negotiations is one thing; to say that the status quo includes a change and means automatic increases in salary is another. The matter of increments can be negotiated and, if it is agreed that such increments can and should be paid, provision can be made for payment retroactively. The inherent fallacy of PERB’s reasoning is that it seeks to make automatic increments a matter off right, without regard to the particular facts and circumstances, by establishing a rule that failure by a public employer to continue such increments during negotiations is a violation of the duty to negotiate in good faith. No *759 such principle appears in the statute, nor should one exist by administrative fiat. Therefore, without expressing complete disapproval of the "Triborough Doctrine”, we hold that it was error for PERB to determine that BOCES had violated its duty to negotiate in good faith solely because of its failure to pay increments after the expiration of an employment agreement.
Accordingly, the judgment of the Appellate Division should be modified, without costs, by annulling and vacating PERB’s determination in its entirety, and, as so modified, affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Cross appeal taken as of right by petitioner dismissed, without costs, upon the ground that petitioner was not aggrieved by the modification at the Appellate Division (CPLR 5601, subd [a], par [iii]). Motion by petitioner for leave to appeal granted. Judgment modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.